IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FIFTH THIRD MORTGAGE COMPANY, )<br>CRANBROOK MORTGAGE )<br>CORPORATION )<br>d/b/a CRANBROOK LOANS, )<br>and MICHAEL AYOUB, )<br>)<br>Defendants. )<br>_____) | CIVIL ACTION NO. |

## CONSENT ORDER

### I. INTRODUCTION

This Consent Order ("Order") resolves the claims of the United States that the Defendants, Fifth Third Mortgage Company ("Fifth Third"), Cranbrook Mortgage Corporation d/b/a Cranbrook Loans ("Cranbrook"), and Michael Ayoub (together, "Defendants"), have violated the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, by discriminating on the basis of disability, and have violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, by discriminating on the basis of receipt of public assistance.  The Order also resolves the claims of the United States brought pursuant to 42 U.S.C. § 3612(o) on behalf of Robert Carruthers and Marilyn Carruthers.

There has been no factual finding or adjudication with respect to any matter alleged by the United States.  The parties have entered into the Order to avoid the risks, expenses, and

burdens of litigation and to resolve voluntarily the claims in the Complaint of the Defendants' alleged violations of the FHA and the ECOA.

## II. BACKGROUND

Fifth Third is headquartered in Cincinnati, Ohio and is indirectly owned by Fifth Third Bancorp. Fifth Third conducts direct lending via branches in 12 states and internet banking services, and offers mortgage loans in 38 states. Fifth Third Bancorp provides a diversified range of banking and non-banking financial services and products.

Cranbrook is a mortgage broker located in Clinton Township, Michigan. At the time of the Carruthers' loan application, Cranbrook was an approved mortgage broker for Fifth Third and was authorized to originate loans on Fifth Third's behalf. Michael Ayoub is the CEO and President of Cranbrook and was the loan officer for the Carruthers' loan application.

The United States alleges that the Defendants discriminated against Robert and Marilyn Carruthers and certain other mortgage applicants on the basis of disability and receipt of disability income by requiring, as a condition of originating a mortgage loan, that some applicants provide a letter from a doctor to show that Social Security Disability Insurance ("SSDI") income and other disability income would continue. The Defendants deny these allegations. Robert and Marilyn Carruthers filed a complaint with the Department of Housing and Urban Development ("HUD") as set out in the Complaint. Fifth Third and Cranbrook agree to pay money damages to Robert and Marilyn Carruthers. Fifth Third also agrees to pay money damages to other mortgage applicants and borrowers who either were, or may have been, requested to provide a letter from a doctor or other medical information to show that their SSDI income or other disability income would continue ("Affected Borrowers"). Fifth Third and Cranbrook each agree to maintain revised policies with regard to disability income, and provide

training to their respective employees to ensure that mortgage applicants with a disability are treated in a manner that does not discriminate on the basis of disability or receipt of public assistance, consistent with the requirements of the FHA and the ECOA.

### III.  REMEDIAL ORDER

1. The Effective Date shall be the date on which the Order is approved and entered by the Court.

2. The Defendants, including all of their respective officers, employees, agents, assignees, successors in interest, and all those in active concert or participation with any of them, are hereby enjoined from engaging in any act or practice that unlawfully discriminates against a mortgage loan applicant on the basis of disability or receipt of public assistance in connection with a submitted or potential mortgage application.  This prohibition includes, but is not limited to, the adoption, performance, or implementation of any policy, practice, or act that results in unlawful discrimination against an applicant with a disability or an applicant who relies on SSDI income or other disability income.

**A.  Cranbrook Policies and Procedures**

3. On March 1, 2014, Cranbrook submitted to the United States its new policies regarding proper documentation of SSDI and other disability income when underwriting mortgage loans.  During the term of this Order, Cranbrook shall maintain the new policies or substantially similar policies regarding the documentation of disability income.

4. Cranbrook shall not request that an applicant for a mortgage loan provide a letter from a doctor to document or substantiate SSDI or other disability income or to establish that SSDI or other disability income will continue.

3

### B. Cranbrook Training

5. Within 90 days of the Effective Date of the Order, Cranbrook shall provide equal credit opportunity training to its management officials and employees who participate in taking applications for, underwriting, originating, or pricing loans secured by residential real estate. During the term of this Order, Cranbrook shall provide equal credit opportunity training to each new management official or employee whose responsibilities include those set forth in the preceding sentence within 90 days of beginning his or her employment in that position.

6. During the equal credit opportunity training, Cranbrook shall provide to each participant training on the terms of this Order, the policies referenced therein, the requirements of the FHA, the ECOA, and his or her responsibilities under each; shall address proper documentation of disability income; and shall provide a copy of the Order and the policies referenced therein. All management officials and employees who receive a copy of the Order shall execute the Employee Acknowledgement at Appendix A. The content of the training program required by Paragraphs 5 and 6 shall be approved in advance by the United States. Any expenses associated with this training program shall be borne by Cranbrook.

### C. Fifth Third Policies and Procedures

7. On May 17, 2012, Fifth Third promulgated revised underwriting policies regarding the documentation of SSDI and other disability income. During the term of this Order, Fifth Third shall maintain the revised policies or substantially similar policies regarding the documentation of disability income.

8. Fifth Third shall not request that an applicant for a mortgage loan provide a letter from a doctor to document or substantiate SSDI or other disability income or to establish that SSDI or other disability income will continue.

**D.     Fifth Third Training**

9.      During the term of this Order, as part of its regular training for employees, Fifth Third shall provide equal credit opportunity training for management officials and employees who participate in taking applications for, underwriting, originating, or pricing loans secured by residential real estate.  Fifth Third shall provide equal credit opportunity training to each new management official or employee whose responsibilities include those set forth in the preceding sentence within 90 days of beginning his or her employment in that position.  The training shall include the relevant terms of this Order, the policies referenced therein, the requirements of the FHA and the ECOA, and the responsibilities of employees under each; it shall address proper documentation of disability income.

10.     Within 90 days of the Effective Date, Fifth Third shall provide to each management official and employee who participates in taking applications for, underwriting, originating, or pricing loans secured by residential real estate, a copy of the Order and the policies referenced therein, together with written training relating to the Order, the policies, and proper documentation of disability income.  All management officials and employees who receive a copy of the Order and policies shall execute the Employee Acknowledgement at Appendix B, which may be executed in substantially similar content through an email or other electronically recorded response.  The content of the training required by Paragraphs 9 and 10 shall be approved in advance by the United States.  Any expenses associated with this training program shall be borne by Fifth Third.

**E.     Compensation for HUD Complainants**

11.     Fifth Third has paid HUD complainants Robert and Marilyn Carruthers $55,000 total.

12. Within ten (10) business days of receipt of a properly executed release in the form of Appendix C, or the Effective Date of the Order, whichever is later, Cranbrook shall pay HUD complainants Robert and Marilyn Carruthers $2,000 total.

### F. Compensation for Affected Borrowers

13. Fifth Third will deposit in an interest-bearing escrow account the total sum of $1,522,000 to compensate borrowers affected by Fifth Third's practices relating to disability income ("Affected Borrowers"). Title to this account will specify that it is "for the benefit of affected borrowers pursuant to Order of the Court in United States v. Fifth Third Mortgage Company et al." Fifth Third will provide written verification of the deposit to the United States within 5 days of the Effective Date of the Agreement. Any interest that accrues will become part of the Settlement Fund and be utilized and disposed of as set forth herein.

14. Within five days of the Effective Date, the United States will provide Fifth Third with a list of Affected Borrowers, together with the compensation amounts determined by the United States. Within thirty (30) days of the Effective Date of the Order, Fifth Third shall send a letter substantially in the form of Appendix D, a release in the form of Appendix E, and a postage paid return envelope to each Affected Borrower. All mailings to Affected Borrowers shall be approved in advance by the United States.

15. Fifth Third shall use best efforts, using all reasonable methods, to locate and contact the Affected Borrowers, including (a) searching for updated addresses via Fifth Third's own address records for other products, Lexis Nexis, and other suitable address databases, (b) sending duplicate letters to updated addresses, and (c) contacting affected borrowers by telephone. Fifth Third shall regularly report to the United States its progress on locating and contacting Affected Borrowers.

16. Fifth Third shall provide a cost-free means for Affected Borrowers to contact it, including an email address, a toll-free telephone number, and means for persons with disabilities to communicate effectively, including TTY.

17. Within ten (10) days of receipt of a properly executed Release from an Affected Borrower, Fifth Third shall pay the Affected Borrower the amount determined by the United States. No Affected Borrower shall be paid any amount under this Order until he or she has executed and delivered to Fifth Third a written release.

18. Fifth Third shall not be entitled to a set-off, or any other reduction, of the amount of payments to an Affected Borrower because of any debts owed to Fifth Third by an Affected Borrower. Fifth Third also shall not refuse to make a payment based on a release of legal claims previously signed by any Affected Borrower.

**G. Identification of Additional Affected Borrowers**

19. During the first year of the Order, if any person contacts the United States or Fifth Third claiming that he or she should be paid as an Affected Borrower, or should be paid an amount different than the amount determined by the United States, Fifth Third shall undertake a review of all records related to the mortgage application of the person. Fifth Third shall report to the United States all such contacts and the results of the review of records, and the United States shall determine whether the person should be paid as an Affected Borrower and the amount of the payment.

20. All money not distributed to Affected Borrowers from the Settlement Fund shall be distributed to one or more organizations that provide services including credit and housing counseling, legal representation of borrowers seeking to obtain a loan modification or to prevent foreclosure, financial literacy, or other related programs targeted at persons with disabilities

("Organization").  Before distributing the funds, Fifth Third will provide the name of the Organization(s) and a description of the program(s) to which the remainder Settlement Funds are to be allocated and obtain the non-objection of the United States.  Fifth Third will submit the name of the Organization(s) and supporting information to the United States 15 months after the Effective Date, and the United States shall respond to Fifth Third's request for non-objection within 10 days of Fifth Third's request.  The United States may request modification of the selected program(s) or before approving the Organization(s).  Organization(s) must not be related to Fifth Third, Fifth Third Bancorp, or any entity owned by Fifth Third Bancorp.  The parties shall obtain the Court's approval for the Organizations and the amount to be distributed to each prior to distribution provided by Paragraph 20.  Fifth Third shall require each Organization to submit to Fifth Third and the United States a report detailing that funds are utilized for the purposes identified in Paragraph 20 within one year after the funds are distributed and every year thereafter until the funds are exhausted.

## IV.  EVALUATING AND MONITORING COMPLIANCE

21. Within 90 days of the Effective Date, Fifth Third shall implement a monitoring program designed to ensure compliance with its policies regarding documentation of SSDI income and other disability income and the Order, which will monitor loan processing and underwriting activities for compliance with the Bank's policies and applicable fair lending laws with respect to applicants that rely on SSDI income or other disability income in mortgage applications received after May 17, 2012.  Fifth Third will provide a description of the monitoring program to the United States within 60 days of the Effective Date of the Order.  Fifth Third shall maintain the monitoring program or a substantially similar monitoring program during the term of the Order.

22. If the monitoring program identifies borrowers who meet the criteria for compensation under this Order, Fifth Third shall report information concerning the borrowers to the United States and the United States shall determine whether the person should be paid as an Affected Borrower and the amount of the payment. If the funds in the Settlement Fund are not sufficient to compensate all Affected Borrowers identified via this process, Fifth Third shall deposit additional funds sufficient to pay all Affected Borrowers.

23. For the duration of the Order, Fifth Third and Cranbrook shall each retain all records relating to their respective obligations hereunder as well as their compliance activities as set forth herein. The United States shall have the right to review and copy such records upon request, including files and electronic data for mortgage applications made during the duration of the Order.

24. Cranbrook shall submit a report to the United States on its progress in completing the requirements of the Order four months after the Effective Date and six months after the Effective Date. The reports shall provide a complete account of Cranbrook's actions to comply with each requirement of the Order, an assessment of the extent to which each obligation was met, an explanation of why any particular obligation was not met, and any recommendations for additional actions to achieve the obligations of the Order. In addition, Cranbrook shall attach to the reports copies of training materials disseminated pursuant to the Order.

25. In addition to the submission of any other plans or reports specified in the Order, Fifth Third shall submit reports to the United States on its progress in completing the requirements of the Order. Each such report shall provide a complete account of Fifth Third's actions to comply with each requirement of the Order during the previous reporting period, an assessment of the extent to which each obligation was met, an explanation of why any particular

obligation was not met for the previous reporting period, and any recommendations for additional actions to achieve the obligations of the Order.  Fifth Third shall submit reports every six months in the first year after the Effective Date and shall submit a final report 60 days prior to the expiration of the Order demonstrating full compliance with all obligations under the Order.  In addition, if applicable, Fifth Third shall attach to the reports copies of training materials disseminated pursuant to the Order.

## V.  ADMINISTRATION

26. The Order shall remain in effect for 24 months after the Effective Date.  Notwithstanding the above, the Order may be extended further for either party upon motion of the United States to the Court, for good cause shown.

27. The details in administration set forth in Paragraphs 14 through 17 may be modified by written agreement of the United States and Fifth Third and without further Court approval.  Any time limits for performance fixed by the Order may be extended by written agreement of the relevant parties.  Other modifications to the Order may be made only upon approval of the Court, upon motion by either party.

28. The Order shall be binding on Fifth Third and Cranbrook, including all their respective officers, employees, agents, representatives, assignees, and successors in interest, and all those in active concert or participation with any of them.  In the event Fifth Third or Cranbrook seeks to transfer or assign all or part of its respective operations, and the successor or assign intends on carrying on the same or similar type of business, as a condition of sale, Fifth Third or Cranbrook shall obtain the written agreement of the successor or assign to any obligations remaining under the Order for its remaining term.

29. Nothing in the Order shall excuse Fifth Third's or Cranbrook's non-compliance with any currently or subsequently effective provision of law or order of a regulator with authority over Fifth Third or Cranbrook that imposes additional obligations on Fifth Third or Cranbrook.

30. The parties agree that, as of the Effective Date, litigation is not "reasonably foreseeable" concerning the matters described in the Order. To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in the Order, the party is no longer required to maintain such a litigation hold.

31. In the event that any disputes arise about the interpretation of or compliance with the terms of the Order, the parties shall endeavor in good faith to resolve any such dispute between themselves before bringing it to this Court for resolution. If the United States believes that Fifth Third or Cranbrook has violated any provision of the Order, it will provide Fifth Third or Cranbrook written notice thereof and allow 30 days to resolve the alleged violation before presenting the matter to this Court. In the event of either a failure by Fifth Third or Cranbrook to perform in a timely manner any act required by the Order or an act by Fifth Third or Cranbrook in violation of any provision hereof, the United States may move this Court to impose any remedy authorized by law or equity, including attorneys' fees and costs.

32. Fifth Third's and Cranbrook's compliance with the terms of the Order, as those terms apply to each party, shall fully and finally resolve all FHA claims and all ECOA claims that are raised in the Complaint's allegations of discrimination on the basis of disability and discrimination on the basis of receipt of public assistance, including all claims for equitable relief and monetary damages and penalties arising from those claims against Fifth Third, Cranbrook,

11

Michael Ayoub, and David Ambo. The Order does not release any other legal claims, including claims that may be held or are currently under investigation by any federal agency, claims for practices not addressed in the Complaint's allegations, or any claims that may be pursued for actions that may be taken by any executive agency established by 12 U.S.C. § 5491 or the appropriate Federal Banking Agency ("FBA"), as defined in 12 U.S.C. § 1813(q), against Fifth Third or Cranbrook, any of their respective affiliated entities, and/or any institution-affiliated party of Fifth Third or Cranbrook, as defined in 12 U.S.C. §1813(u), pursuant to 12 U.S.C. § 1818 or any statute or regulation. The Order does not resolve and release any claims other than claims for discrimination.

33. The United States, Fifth Third, and Cranbrook shall each bear their own costs and attorneys' fees associated with this litigation.

34. The Court shall retain jurisdiction for the duration of the Order to enforce the terms of the Order, after which time the case shall be dismissed with prejudice.

SO ORDERED, this 11th day of August, 2014.

S/ Marc T. Treadwell
_____
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

The undersigned hereby apply for and consent to the entry of the Order:

**For Plaintiff United States of America:**

Dated: August 7, 2014                                    Respectfully submitted,


MICHAEL J. MOORE                                         MOLLY MORAN
United States Attorney                                   Acting Assistant Attorney General
Middle District of Georgia                               Civil Rights Division
                                                         STEVEN H. ROSENBAUM
                                                         Chief
                                                         Civil Rights Division
                                                         Housing and Civil Enforcement Section
                                                         JON M. SEWARD
                                                         Deputy Chief
                                                         Civil Rights Division
                                                         Housing and Civil Enforcement Section


*s/ Bernard Snell*                                       *s/ Lucy G. Carlson*
BERNARD SNELL                                            LUCY G. CARLSON
Assistant United States Attorney                         Trial Attorney
Middle District of Georgia                               Civil Rights Division
GA Bar No. 665692                                        U.S. Department of Justice
Gateway Plaza                                            950 Pennsylvania Avenue NW – G St.
300 Mulberry Street, 4th Floor                           Northwest Building, 7th Floor
Macon, Georgia  31201                                    Washington, DC 20530
bernard.snell@usdoj.gov                                  lucy.carlson@usdoj.gov
Phone: (478) 752-3511                                    Phone: (202) 305-0017
                                                         Fax: (202) 514-1116

**For Fifth Third Mortgage Company**

Dated: August 7, 2014	*s/ Andrea K. Mitchell*
	Andrew L. Sandler
	Andrea K. Mitchell
	BuckleySandler LLP
	1250 24th Street NW, Suite 700
	Washington, DC 20037
	asandler@buckleysandler.com
	amitchell@buckleysandler.com
	Phone:  (202) 349-8000
	Fax:  (202) 349-8080

**For Cranbrook Mortgage Corporation**

Dated: August 6, 2014	*s/ Theresa L. Kitay*
	Theresa L. Kitay
	Attorney at Law
	GA Bar No. 424295
	578 Washington Blvd.
	Suite 836
	Marina del Rey, California 90292
	(310) 578-9134
	Fax (770) 454-0126
	Email tkitay@kitaylaw.net

**For Michael Ayoub**

Dated: August 6, 2014	*s/ Theresa L. Kitay*
	Theresa L. Kitay
	Attorney at Law
	GA Bar No. 424295
	578 Washington Blvd.
	Suite 836
	Marina del Rey, California 90292
	(310) 578-9134
	Fax (770) 454-0126
	Email tkitay@kitaylaw.net

# **APPENDIX A**

Cranbrook Mortgage Corporation Employee Acknowledgment

     I acknowledge that on _____, I was provided information about and access to the Consent Order entered by the Court in <u>United States v. Fifth Third et al.</u> (M.D.Ga.), as well as Cranbrook Mortgage Corporation's written policies regarding disability income. I have had my questions about these documents answered. I understand my legal responsibilities and shall comply with those responsibilities.

_____
Signature

_____
Print Name

_____
Job Title

_____
Date

## APPENDIX B

Fifth Third Mortgage Company Employee Acknowledgment

I acknowledge that I was provided information about and access to the relevant sections of the Consent Order entered by the Court in <u>United States v. Fifth Third et al.</u> (M.D.Ga.), as well as Fifth Third Mortgage Company's written policies regarding proof of continuance of disability income.  I have had my questions about these documents answered.  I understand my legal responsibilities and shall comply with those responsibilities.

_____
Signature

_____
Print Name

_____
Job Title

_____
Date

**APPENDIX C**

<u>Release</u>

In consideration for the parties' agreement to the terms of the Consent Order entered in <u>United States v. Fifth Third et al.</u> (M.D.Ga.), and the payment to us of $2,000 pursuant to the Consent Order and effective upon that payment, we hereby release and forever discharge all claims, rights, remedies, and recoveries against Cranbrook Mortgage Corporation, Michael Ayoub, and David Ambo related to the facts of housing and credit discrimination on the basis of disability alleged in the litigation referenced above, including claims known and unknown, up to and including the date of execution of this release.  We understand that this releases those claims, rights, remedies and recoveries against Michael Ayoub, David Ambo, and Cranbrook Mortgage Corporation, and against any and all related entities, parents, predecessors, successors, subsidiaries, and affiliates, and against any and all of their past and present directors, officers, agents, managers, supervisors, shareholders, and employees and their heirs, executors, administrators, successors in interest, or assigns.

Executed this \_\_\_ day of _____, \_\_\_\_.

_____
Robert Carruthers
127 Northridge Drive
Macon, GA 31220

_____
Marilyn Carruthers
127 Northridge Drive
Macon, GA 31220

**APPENDIX D**

[Letter to Affected Borrowers]

The United States settled certain claims regarding discrimination on the basis of disability against Fifth Third Mortgage Company. Among other things, Fifth Third Mortgage Company has agreed to compensate mortgage loan applicants who were asked to provide a letter from a doctor or other medical information to document Social Security Disability Insurance ("SSDI") income or other disability income.

On [date] the United States District Court for the Middle District of Georgia entered an order regarding this settlement. **Under the Court's order, Fifth Third Mortgage Company has agreed to pay you[     ].** To receive your payment, you must sign and return the enclosed Release. By signing the Release, you agree that you will not sue Fifth Third Mortgage Company or any company affiliated with Fifth Third Mortgage Company for any claims you may have against them based on alleged discrimination on the basis of your SSDI income or other disability income. If you decide to sign this Release, please <u>write the date</u>, <u>print your name</u> and <u>sign your name</u> where designated. **You should return the signed Release in the enclosed pre-addressed postage pre-paid envelope.**

After you sign and return the release, the money that is to be paid to you will be sent to you by check.

Please be aware that the money you receive may be considered taxable income and thus may affect your federal, state, or local tax liability. The United States Department of Justice and Fifth Third Mortgage Company cannot give you any advice on tax or other legal matters. We encourage you to consult with a qualified individual or organization about any possible tax or other consequences resulting from your receipt of this payment.

If you do not want to participate in this settlement, you may decline to do so. By declining to participate, you will give up your right to receive money through this settlement, but will not waive any other rights or claims that you believe you may have.

Please also be advised that government attorneys cannot act as your private attorney. Therefore, you may want to consult with a private attorney to discuss this matter and the options available to you or to have an attorney of your choice contact us.

If you have questions about the settlement, or if any of your contact information changes, please call 1-888-XXX-XXXX (TTY 1-855-XXX-XXXX) or email XXX@XXX.com. None of the parties to the settlement can offer advice on whether you should participate in the settlement.

**APPENDIX E**

Release

In exchange for the payment to me of $_____ and effective upon that payment, I hereby release and forever discharge all claims, rights, remedies, and recoveries related to the facts of housing and credit discrimination on the basis of disability and receipt of public assistance in the court case referenced above, and in connection with my application(s) for a residential mortgage.  These claims may be known and unknown, up to and including the date of execution of this release.  I understand that this releases those claims, rights, remedies and recoveries against Fifth Third Mortgage Company and against any and all related entities, parents, predecessors, successors, subsidiaries, and affiliates, and against any and all of their past and present directors, officers, agents, managers, supervisors, shareholders, and employees and their heirs, executors, administrators, successors in interest, or assigns.

Executed this ___ day of _____, ____.

_____
Signature

_____
Print Name

_____
Address